SPEEDOGRAPH CORPORATION

*v.*

FRANK MAIER.

[Decided August 15th, 1920.]

1. In the absence of fraud, extrinsic evidence that a written contract does not mean what is plainly written as understood at the time, is not admissible either at law or equity.

2. A corporation which contracted to pay a trustee of one of its organizers a cash sum, in addition to corporate stock for the transfer of property which he held in trust for the organizer, cannot procure restraint of an action at law by the trustee to recover the cash payment because of the trustee's agreement with the organizer that he would apply it to the payment of stock subscriptions.

3. A corporation is not liable on a promise made by one of its organizers to pay for services rendered in connection with property turned over to the corporation.

On bill, &c.

*Mr. Milton M. Unger,* for the complainant.

*Messrs. Fleming & Handford,* for the defendant.

BACKES, V. C.

This bill is to restrain an action at law. The defendant held in trust for one Smith certain personal property supposedly of great value. At the request of Smith he conveyed it to the

complainant corporation for $1,214,000 of its capital stock and $1,000 in cash. The corporation was formed by Smith and one Walbridge, with an authorized capital stock of $1,215,000, and commenced business with $1,000 subscribed by dummy organizers. Smith and Walbridge now held all the capital stock issued for property purchased ( ?) and also those issued to the dummy subscribers. Smith contributed the property plus his experience, and Walbridge, for his share of the stock, financed the company to a considerable sum; and it is now operating with more or less success. In promoting the scheme Smith had the defendant write a formal proposal to the corporation that he would sell the property for the consideration already mentioned, and the corporation, with like formality, accepted. The defendant thereupon transferred the property and directed the company to issue the stock to Smith and Walbridge; nothing was said about the $1,000. The defendant brought suit at law to recover it. He and Smith are now at loggerheads. To a plea that there was no intention that the promise to pay the $1,000 was to be fulfilled and that it was mere make-believe, the law court turned a deaf ear, and struck it out. Then the complainant came here complaining and setting up the defence the law court would not listen to and charging that the enforcement of the promise would be a fraud upon the company. The case was tried wholly upon the theory that the defendant was prosecuting the suit at law fraudulently to force the corporation to compensate him for his services to Smith, and to recoup his loss in a corporation that he and Smith were interested in, and whose property was the property conveyed by the defendant to the complainant. That undoubtedly was his purpose, but I cannot view the suit in that light, whatever the personal motives of the defendant may be. The written proposal by the defendant to the complainant, to sell the property for the capital stock of the complainant corporation and $1,000 in cash, and the acceptance thereof, were drawn by the counsel of the complainant, and embody the real understanding of the contracting parties. The counsel, who was a witness, explained that the $1,000 cash item was intended to take care of, that is, to pay,

the subscriptions of the dummy organizers, and, as I recall his statement, to clear the treasury of all its stock. That may well be, but in the absence of fraud, extrinsic evidence that a written contract does not mean what is plainly written, as understood at the time, is not admissible either at law or in equity. *Naumberg* v. *Young, 44 N. J. Law 331, 339; Ramsey* v. *Perth Amboy Shipbuilding, 72 N. J. Eq. 165.* As between the defendant and Smith, the defendant undoubtedly could be called upon by Smith to apply the money to the payment of the dummy subscriptions, but that equity does not relieve the company from its obligation. The whole scheme appears to be, and I have no doubt was, a fraud upon the statute (a question that is not now before me), but that there was fraud on the part of the defendant in procuring the promise of the company or that there is fraud in his effort at law to recover, is not shown. The promise of the company to pay the $1,000 has not been kept, and the company cannot escape liability, except by bringing Smith into the reckoning. The defendant stands in the relation of trustee to Smith, and to him he holds the duty of collecting the price. Smith has not released him. Smith is not the company—Walbridge owns half the stock. If they should have a falling out, Smith might call upon the defendant to make good. Who can tell? Smith is not a party to the suit. The bill will be dismissed.

The defendant filed a counter-claim to make him whole for his services to Smith and for his loss of stock in the corporation, whose property Smith absorbed, and which the defendant, at Smith's request, turned over to the complainant. Smith's promise is not the obligation of the company. It has not assumed it; on the contrary, it expressly repudiates it. The counter-claim also will be dismissed.